## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re Miranda Kristin Renfrow,        )<br>          )<br>    Debtor,           )<br>          )<br>_____   )<br>          )<br>**MIRANDA KRISTIN RENFROW,**  )<br>          )<br>    **Plaintiff-Appellee**    )<br>          )<br>**v.**                 )<br>          )<br>**COURTNEY GROGAN, Successor** )<br>**Trustee of the Joe C. Cole Revocable** )<br>**Trust, Under Trust Agreement dated** )<br>**March 28, 2002, and ATKINSON,** )<br>**HASKINS, NELLIS, BRITTINGHAM,** )<br>**GLASS & FIASCO,**        )<br>          )<br>    **Defendants-Appellants.**  )  | **Case No. 21-cv-00228-JED-SH**<br><br>*Appeal from Adv. Case No. 17-01027-R*<br>*Underlying Bankr. Case No. 17-10385*<br>*(Bankr. N.D. Okla.)* |

## OPINION AND ORDER

Before the undersigned is the motion to stay enforcement of the bankruptcy court judgment pending appeal (the "Motion"), filed by Defendants-Appellants Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust ("Grogan"), and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco ("Atkinson Haskins"). (ECF No. 18.) Plaintiff-Appellee Miranda Kristin Renfrow ("Renfrow") opposes the motion in part. The matter has been briefed (ECF Nos. 18, 23, 24), and a hearing on the matter was held on October 4, 2021. For the reasons set forth below, Defendants-Appellants' Motion is granted.

## BACKGROUND

The procedural history of this case is somewhat complex, if relatively undisputed. In 2016, Grogan filed a state court action against Renfrow and her company, Envision Medical & Surgical Eye Care, P.C. ("Envision")—*Courtney Grogan v. Miranda K. Renfrow, D.O., et al.*, No. CJ-2016-

02033, Tulsa County, Oklahoma (the "State Court Action"). As originally pled in the State Court Action, Grogan sought, *inter alia*, repayment of monies owed under an asset purchase and sale agreement and two promissory notes. (ECF No. 13-1 at 53-56.[1]) Grogan was represented by counsel from Atkinson Haskins in the State Court Action. (*E.g.*, *id.* at 56.)

Renfrow then filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 10, 2017. (ECF No. 13-2 at 35-42.) All of Renfrow's prepetition debts—and all claims against Renfrow related to prepetition actions—were discharged on June 15, 2017. (ECF No. 13-1 at 73-74.) Envision did not file for bankruptcy.

Following Dr. Renfrow's discharge, on August 1, 2017, Grogan filed an amended petition in the State Court Action. (ECF No. 13-1 at 86-91.) The amended petition added a claim that, "after . . . Renfrow filed for bankruptcy, . . . [she] . . . caused Envision . . . to transfer substantial assets" into her personal accounts in violation of the Oklahoma Uniform Fraudulent Transfer Act ("UFTA"), Okla. Stat. tit. 24, §§ 112-123. (*Id.* at 86, 89.) Grogan also continued to assert her original claims against Envision and, as noted below, arguably against Renfrow. (*Id.* at 86-88.)

On August 26, 2017, Plaintiff-Appellee Renfrow commenced the underlying Adversary Proceeding against Defendants-Appellants (ECF No. 13-1 at 29-37), alleging the State Court Action sought collection of prepetition debt that had been previously discharged in bankruptcy (*id.*). Renfrow argued that the amended petition was <u>still</u> asserting the original claims on the contract and promissory notes and that the new UFTA claims were a ruse to continue litigation against her. (*Id.* at 32.)

---

[1] Because the record includes many documents in single ECF files, all references to pages numbers refer to the page in the ECF file, not the page on the referenced document itself.

Back in the State Court Action, Grogan filed a "Partial Dismissal with Prejudice," stating that she "confirms that [she] has not made any claims for relief against [Renfrow]" under the paragraphs of the amended petition dealing with the contract and promissory notes; that "any such claims that previously existed under [those paragraphs] were discharged in bankruptcy [on] June 15, 2017"; and that, therefore, any claims in those paragraphs "that could be construed as seeking recovery from [Renfrow], individually, are hereby dismissed with prejudice." (*Id*. at 298-99.) The State Court Action then proceeded to trial against both Envision and Renfrow.  The state court instructed the jury that they could not grant judgment against Renfrow for the contract-related claims.  (*Id.* at 390.)  Moreover, the court instructed the jury that "[i]f you choose, you may grant judgment against Defendant Renfrow based upon the [UFTA] only for fraudulent transfers made after March 10, 2017."  (*Id.* at 390.)

In closing arguments, Grogan's attorney asked for $120,000 in damages against Renfrow. (ECF No. 20-1 at 642.)   According to his argument, this consisted of $40,000 in the value of accounts receivable (including the $3,100 Envision collected and Renfrow transferred to her personal account post-petition); $50,000 for goodwill; and $30,000 for equipment.  (*Id.* at 638-42.)  After Renfrow's counsel objected that this argument included pre-petition transfers (*id.* 644), the state court repeated its instructions to the jury,

> Again, this is closing argument, ladies and gentlemen.  This is not evidence. They're going to have different interpretations.

> I would just re-emphasize on this point, the Court has instructed . . . that if you choose, you may grant judgment against Defendant Renfrow based upon the Uniform Fraudulent Transfer Act only for fraudulent transfers made after March 10th, 2017, which is the date of the bankruptcy.  It's for you to determine what assets those are and what date those were made.

> So that's the controversy.  But counsel is correct, that is the operative date that you look at.

(*Id.* at 646-47.)  Renfrow's counsel then began his closing argument, disputing that the assets were fraudulently transferred.  (*Id.* at 647-48.)  Near the conclusion of his argument, Renfrow's counsel also stated,

> Now, the last count is against Dr. Renfrow, only Dr. Renfrow, and that's for fraud.
>
> You have to determine she intentionally took money so the Plaintiff couldn't get it. That has not been proven.  She did take money, $3,100.  She didn't transfer the charts so that the Plaintiff couldn't get the charts.  She didn't transfer any equipment and she didn't transfer the accounts receivable.  I don't believe that you'll find she intended to commit fraud.  If you do, the maximum you should award on this one is $3,100, not $120,000.

(*Id.* at 652.)

The jury then returned a verdict against both defendants.  (ECF No. 13-1 at 350-51.)  As for Renfrow, the jury found she violated the UFTA, but it did not award the damages figure suggested by either party, instead awarding $89,500 in damages.  (*Id.* at 351.)  As for Envision, the jury awarded damages of $111,293.75 for Grogan's breach of contract claim and claims regarding one of the promissory notes.  (*Id.* at 350-51.)  Adding in other amounts owed by Envision under the first promissory note, the state court then entered judgment in the amount of $197,892.04 against Envision and $89,500 against Renfrow on January 2, 2018 (the "State Court Judgment"). (*Id.* at 375-77.)  In so doing, the court specifically found that the jury had fixed Dr. Renfrow's damages "for fraudulent transfers occurring after March 10, 2017."  (*Id.* at 376.)

Renfrow immediately filed a motion with the state court for judgment notwithstanding the verdict ("JNOV") or for new trial (ECF No. 13-2 at 171-247), arguing that Grogan's counsel (from Atkinson Haskins) made improper statements in his closing argument by referencing transfers that Renfrow asserted occurred—if they occurred at all—pre-bankruptcy (*id.* at 173).  Renfrow's counsel argued "the only measure of damages the jury could award on the fraudulent transfer claim against Renfrow would be a total of $3,100 in monies Renfrow transferred from Envision's bank

account after March 10, 2017 (the date of bankruptcy filing)."  (*Id.*)  The state court denied Renfrow's motion on July 24, 2018 (*id.* at 260), and Renfrow immediately appealed to the Oklahoma Supreme Court (*id.* at 261-272).  That appeal is currently stayed pending resolution of the appeal in this case.[2]

Meanwhile, three days after filing the state-court JNOV motion, Renfrow moved to amend her complaint in the Adversary Proceeding, asserting the same claims that were pending before the state court regarding counsel's closing argument.  (ECF No. 13-1 at 353-367.)  The Bankruptcy Court granted leave to amend, and the case proceeded through discovery, motions practice, and finally trial in January 2019.   On April 23, 2019, the Bankruptcy Court issued a detailed Memorandum Opinion and Judgment (the "Adversary Judgment").  (ECF No 3-1 at 1-81.)  The Adversary Judgment awarded compensatory damages of $104,867—consisting of $50,000 in damages for emotional distress, $17,306 in damages for attorney fees and costs incurred in the State Court Action, and an award of $37,561 in fees and costs for the Adversary Proceeding—plus $100,000 in punitive damages.  (*Id.* at 81; *id.* at 2.)  The Bankruptcy Court also found that "Defendants turned the UFTA claim worth, at most, $3,155 into a judgment requiring Renfrow to repay Grogan $89,500 of the discharged Loans."  (*Id.* at 56.)  As such, the court declared the State Court Judgment to be void and directed Defendants-Appellants to "obtain an order vacating the [State Court] Judgment against Renfrow as void, to dismiss the [State Court] Action against Renfrow, and to take any other action reasonably requested by Renfrow to evidence the fact that the [State Court] Judgment against her is and was void *ab initio*."  (*Id.* at 56-58; *id.* at 1-2.)

---

[2] *See* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CJ-2016-2033&cmid=2952069) (last visited October 21, 2021).

Defendants-Appellants immediately filed a notice of appeal with this Court (the "First Appeal"). (ECF No. 13-4 at 627-30.) *See also* Notice of Appeal, *Renfrow v. Grogran*, No. 19-cv-00248 (N.D. Okla. May 8, 2019), ECF No. 2. The First Appeal ended with an order remanding to the Bankruptcy Court for reconsideration of its Adversary Judgment in light of the civil contempt standard articulated by *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). (ECF No. 13-4 at 882-83.) On remand, the Bankruptcy Court affirmed its previous monetary judgment and injunctive order. (*Id.* at 956-75.) This appeal followed. (ECF No. 3.)

The Court notes this is not the first time Defendants-Appellants have attempted to defer enforcement of the Adversary Judgment. In the First Appeal, Defendants-Appellants sought a stay in front of the Bankruptcy Court, which that court denied, finding against movants on all four factors. (ECF No. 13-4 at 804-18.) Defendants-Appellants then sought a stay before this Court, which Magistrate Judge Frank H. McCarthy also denied. (*Id.* at 872-81.) Judge McCarthy disagreed with the Bankruptcy Court's findings as to two of the four applicable factors—irreparable harm and public interest—but, nevertheless, found that Defendants-Appellants had failed to make their required showing that all four factors weighed in favor of the stay. (*Id.* at 879-881.)

Following the filing of the current appeal, Defendants-Appellants again moved the Bankruptcy Court to stay its Adversary Judgment, and the Bankruptcy Court again entered an order denying the stay. (ECF No. 23-5.) Now, as permitted by Fed. R. Bankr. P. 7062 and 8007, Defendants-Appellants have renewed their motion to stay the Adversary Judgment pending appeal and set a supersedeas bond.

## ISSUE BEFORE THE COURT

As presented in their briefing and in their arguments at hearing, the only issue still before the Court is whether to stay the injunctive portion of the Bankruptcy Court's Adversary Judgment, requiring Defendants-Appellants dismiss their State Court Action against Plaintiff and attempt to void the jury award obtained in their favor.[3]

## ANALYSIS

### I.     Standard of Review

#### A.     New Motion to Stay vs. Appeal of Denial of Stay

The undersigned agrees with Judge McCarthy's previous finding that this Court reviews Defendants-Appellants' motion to stay anew, as opposed to treating the matter as an appeal of the Bankruptcy Court's denial of Defendants' prior motion.  (ECF No. 23-3 at 3 (citing *Lang v. Lang (In re Lang)*, 305 B.R. 905 (B.A.P. 10th Cir. 2004), *aff'd on other grounds,* 414 F.3d 1191 (10th Cir. 2005)).)  In *Lang*, the Tenth Circuit BAP—applying Rule 8007's predecessor (then, Rule 8005)—stated:

> Under this rule, if the bankruptcy court denies a stay pending appeal, the request may be made anew to the appellate court.  Given the ability of a litigant to renew (and argue *de novo*) his or her request for a stay, it is difficult to understand the utility of seeking review [on appeal] of the lower court decision.

305 B.R. at 911, n.31; *see also Drivetrain, LLC v. Kozel (In re Abengoa Bioenergy Biomass of Kan., LLC)*, 589 B.R. 731, 741 (D. Kan. 2018) (district court owes no deference to the bankruptcy court's decision, although it may look to that decision to inform its analysis).  This finding is

---

[3] The Motion also requested that the Court set a supersedeas bond of $350,000 to effectuate a stay of the monetary portion of the Adversary Judgment.  (ECF No. 18 at 5.)  As confirmed at the hearing on this Motion, the parties now agree that Fed. R. Bankr. P. 7062 and Fed. R. Civ. P. 62(b) required staying the monetary judgment upon the posting of an adequate bond, and the parties also now agree that $350,000 is adequate.  The Court has since entered an order approving the bond and staying the monetary portion of the Adversary Judgment upon the posting of that bond.  (ECF No. 33.)

further in accord with the structure of Rule 8007, which assumes the reviewing court will sometimes hear a motion to stay even where the bankruptcy court was not asked to rule, or has not yet ruled, on the motion before it.  Fed. R. Bankr. P. 8007(b)(2).[4]  This is also in accord with the practice governing appeals from judgments of the district court under Fed. R. App. P. 8.  *See, e.g.*, *Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020) (finding an appellate court considers motion to stay pending appeal *de novo*); *see also F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 851-53 (10th Cir. 2003) (per curiam) (applying stay factors anew to grant stay following district court denial).  *But see Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006) (applying deferential standard).

The undersigned, therefore, is not bound by the Bankruptcy Court's ruling on the Defendant's most recent motion to stay and revisits the issues *de novo*.

## B.     Showing Required for Stay

The parties agree that the traditional stay factors apply to this Court's review of the Motion. (ECF No. 18 at 5; ECF No. 23 at 5.)  As articulated by the Supreme Court, these factors include

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

There is substantial overlap between these factors and those governing preliminary injunctions,[5]

---

[4] The Advisory Committee Notes further indicate that seeking a stay before the appellate tribunal is distinct from seeking to overturn the bankruptcy court's ruling and is not in the nature of an appeal:  "Subdivision (b) authorizes a party to seek the relief specified in (a)(1), or the vacation or modification of the granting of such relief, by means of a motion filed in the court where the appeal is pending . . . .  Accordingly, a notice of appeal need not be filed with respect to a bankruptcy court's order granting or denying such a motion."  *Id.* advisory committee's note to 2014 ams.

[5] *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

because similar concerns arise in both circumstances. *Id.* However, "a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct. A stay 'simply suspend[s] judicial alternation of the status quo,' while injunctive relief 'grants judicial intervention . . . .'" *Id.* at 428-429 (quoting *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regul. Comm'n*, 479 U.S. 1312, 1312 (1986)).

The power to hold an order in abeyance while the Court assesses its legality is inherent and a matter of discretion, *id.* at 426 & 433, but a stay is still viewed as an "intrusion into the ordinary processes of administration and judicial review," *id.* at 427 (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)). Thus, a stay will only be granted when the movant has met their "burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-434. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

Therefore, only when the movant has satisfied all four factors should a court grant their motion to stay. *Id.* at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."); *see also id.* at 438 (Kennedy, J., concurring) ("Under the Court's four-part standard, the [movant] must show both irreparable injury and a likelihood of success on the merits, in addition to establishing that the interests of the parties and the public weigh in his or her favor."); *In re Abengoa Bioenergy Biomass of Kan., LLC*, No. 16-10446, 2018 WL 1613667, at *3 (Bankr. D. Kan. Mar. 29, 2018) (applying this standard to stay pending appeal from bankruptcy court). The first two factors are the "most critical." *Nken*, 556 U.S. at 434.

The Court finds, for the reasons explained below, that Defendants-Appellants have made a showing regarding all four factors sufficient to justify granting the Motion to stay the injunctive portion of the Adversary Judgment.

## II.    Defendants-Appellants Satisfied All Four Factors

### A.    Likelihood of Success on the Merits

#### 1.    Applicable Standard

In order to succeed under this factor, Defendants-Appellants must demonstrate that there is more than a mere possibility of relief on appeal. *Id.* It is "not enough that the chance of success on the merits be better than negligible." *Id.* (internal quotations omitted). Defendants-Appellants must be able to demonstrate they are likely to succeed on the merits. *Diné Citizens*, 839 F.3d at 1282 (emphasis added) (applying preliminary injunction test).

Defendants-Appellants cite a series of older cases for the proposition that a "relaxed" likelihood-of-success standard should be applied when the other three factors are met. (*See, e.g.*, ECF No. 18 at 6 (citing *Colo. Pub. Utils. Comm'n v. Yellow Cab Co-op. Ass'n (In re Yellow Cab Co-op. Ass'n)*, 192 B.R. 555, 557 (D. Colo. 1996); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996)).) As it relates to the test for preliminary injunctions, that standard has explicitly been abrogated in this Circuit. *See Diné Citizens*, 839 F.3d at 1282. In *Diné*, the Tenth Circuit noted that the Supreme Court had previously overruled a test that relaxed the irreparable harm factor and found, under that rationale, that any "modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.* (citing *Winter Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). As a result, the Tenth Circuit rejected prior precedent that allowed an applicant to meet a relaxed standard for likelihood of success when the other three requirements tipped heavily in her favor. *Id.* at 1281-82.

As noted above, the standards governing the instant motion to stay overlap with those governing preliminary injunctions.  Indeed, in making this observation, the Supreme Court cited *Winter* and its rejection of a more lenient standard for irreparable harm for preliminary injunctions. *Nken*, 556 U.S. at 434-35.  The undersigned, therefore, agrees with those courts who have extended *Diné* (and, therefore, *Winter*) to the review of motions to stay on appeal.  *See Pueblo of Pojoaque v. New Mexico*, 233 F. Supp. 3d 1021, 1092-93 (D.N.M. 2017) (district court appeal); *Abengoa*, 2018 WL 1613667, at *3 (bankruptcy court appeal).  Defendants-Appellants cannot meet this factor by simply raising "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon*, 79 F.3d at 1020 (quoting *Walmer v. U.S. Dep't of Def.*, 52 F.3d 851, 854 (10th Cir. 1995)).  Rather, the movants must make a strong showing they are likely to succeed on the merits.

**2.      Defendants-Appellants Have Made a Strong Showing of Likelihood of Success**

Applying the test for likelihood of success, the Court finds this factor weighs in Defendants-Appellants' favor.  The Court makes no final determinations about any party's ultimate success on appeal, or their likelihood of success as to the monetary portion of the Adversary Judgment.  Rather, the Court looks solely at the Bankruptcy Court's mandatory injunction ordering that Defendants-Appellants seek to void a judgment purportedly awarding damages solely for post-petition acts.  In this regard, the Court finds Defendants-Appellants are likely to succeed on the merits.

Pursuant to 11 U.S.C. § 524(a)(1), a discharge in bankruptcy "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ." *Id.* (emphasis added).  Section 727(b) operates as a discharge "from all debts that arose before the date of the order for relief," 11

U.S.C. § 727(b) (emphasis added), which is the date the Chapter 7 petition was filed, *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 n.4 (10th Cir. 2008).  As post-petition debt is not discharged, it follows that judgments for post-petition debts are not void <u>to the extent</u> they do not determine the personal liability of a debtor for previously discharged debt.[6]  *See Paul*, 534 F.3d at 1306 ("Liabilities for post-petition conduct are not discharged, and thus do not implicate the discharge injunction." (footnote omitted)); *see also Hobbs v. Netreit, Inc. (In re Hobbs)*, No. 09-21496 ABC, 2012 WL 137506, at *4 (Bankr. D. Colo. Jan. 18, 2012) (dismissing complaint for violation of discharge based on alleged post-petition fraudulent transfers).

The Bankruptcy Court's Memorandum Opinion (ECF No. 3-1 at 56 n.162) cites *Egleston v. Egleston (In re Egleston)*, 448 F.3d 803, 809 (5th Cir. 2006), as an example of a court—like the Bankruptcy Court here—that declared void a state court judgment under 11 U.S.C. § 524(a)(1) for reaching debt previously discharged in bankruptcy.  *Egleston*, however, <u>also</u> stands for the proposition that the reach of section 524 is limited—only those portions of a state court judgment that violate the bankruptcy discharge are void, not the portions arising from post-petition debts or actions.  *Egleston*, 448 F.3d at 809 ("Congress has not provided bankruptcy courts with the general authority to annul state court orders.").[7]  In *Egleston*, the Fifth Circuit attempted to answer the following question: "To what extent are the state court's judgments void under section 524(a)(1)?"  *Id.*  The court reasoned that the focus of its review was "whether the amounts awarded by the state court represent 'a determination of the personal liability of the debtor with respect to any debt

---

[6] The *Paul* court further emphasized the need for the bankruptcy court to avoid "usurping the adjudicative role of the state court" and noted that the bankruptcy court's analysis "should not entail resolving the *merits* of a claim pending in another court . . . ."  *Id.* at 1311 & n.8.

[7] The state court orders at issue in *Egleston* were determinations of damages and alimony resulting from a state court divorce settlement.  *Egleston*, 448 F.3d at 805.  There was no jury verdict and no trial.  *Id.*

discharged under section 727.' If so, then the judgment is void <u>to that extent</u>." *Id.* (emphasis added) (citation omitted).  The court then discussed every state court order at issue to determine whether it violated section 524(a)(1) by awarding damages for discharged debts.  *Id.* at 810-15.  Portions of awards for non-discharged debt were upheld, while damage awards for debt that was discharged were voided.  *Id.*  In instances where the bankruptcy court had voided the state court's judgments in full due to the awards' mingling of discharged <u>and</u> non-discharged debt, the Court remanded for further proceedings, noting that "the state court judgment . . . is void [only] to the extent that those [] fees were incurred in the determination of [plaintiff's] liability with respect to discharged debt." *Id.* at 811-812, 814.  The Court of Appeals reiterated that for "portions of the state court's judgments to be void, they must represent [Plaintiff's] liability for discharged debt.  In other words, [Defendant's] claims to these amounts must have arisen pre-petition." *Id.* at 812.

In Defendants-Appellants' Motion, they argue the Bankruptcy Court did not have the authority to reach the state court jury verdict and determine it violated the bankruptcy discharge, especially considering that (1) Plaintiff allegedly admitted taking money from her company's bank account after the date of discharge and (2) the jury was instructed to only award damages for post-petition transfers of property.  (ECF No. 18 at 10-11.)  Although Plaintiff does not admit that any post-petition transfers were fraudulent, both she and the Bankruptcy Court acknowledge there exists a colorable UFTA claim.  (*See, e.g.*, ECF No. 23 at 9 (complaining that Defendants-Appellants grossly inflated their UFTA claims by "turn[ing] a UFTA claim worth at most $3,155 into a judgment against Dr. Renfrow in the amount of $89,500"); ECF No. 3-1 at 100 ("Renfrow and Brown [Plaintiff's attorney] accepted that Renfrow's withdrawals might support a colorable UFTA claim for recovery of $3,100 and that was the claim they defended.").)  The Bankruptcy Court even acknowledged that "Defendants were entitled to and did proceed to trial on that

[$3,100] claim." (ECF No. 3-1 at 100.)  At the hearing on the instant motion, counsel for the parties agreed that the Bankruptcy Court would not have been able to declare a judgment on the $3,100 claim void.[8]

The problem the Bankruptcy Court had with Defendants-Appellants' conduct, however, was that it believed Defendants-Appellants used the state court UFTA claim as an artifice to recover inflated damages from Plaintiff, the majority of which were for pre-petition debts.  (*See generally* ECF No. 3-1.)  That very well may be the case.  But the fact that the Bankruptcy Court determined that a large portion of the jury award was improper does not mean it could force Defendants-Appellants to void the portion of the award that may have been for actions Plaintiff took post-petition.  As outlined above, judgments are void under 11 U.S.C. § 524(a)(1) only to the extent they violate the bankruptcy discharge.  It may be true that, having determined Renfrow acted fraudulently, and despite being instructed to grant judgment only for "fraudulent transfers [Plaintiff-Appellee] made after March 10, 2017" (ECF No. 13-1 at 390), the jury in the State Court Action became enflamed (or was deceived) and awarded damages based on pre-petition debt.  The Court need not decide that issue now, nor need the Court decide whether the Bankruptcy Court could make such a finding in the face of the explicit jury instructions to the contrary and the Tenth Circuit's admonition that it avoid usurping the adjudicative role of the state court.  It is sufficient for now that, regardless of such findings, the Bankruptcy Court lacked the power to declare a judgment for post-petition debts void, and Defendants-Appellants are likely to succeed on their claim that such an amount—however small in comparison to the state court award as a whole— may not be entirely voided by the Bankruptcy Court.

---

[8] Plaintiff, however, disputed at hearing whether the jury verdict in the State Court Action was for the post-petition $3,100 transfer.

The undersigned does not reach Defendants-Appellants other arguments regarding likelihood of success on the merits at this time. The majority of these arguments go toward Defendants-Appellants' likelihood of success in overturning the monetary portion of the Adversary Judgment (ECF No. 18 at 10-13) and therefore do not need to be addressed in this Order. As such, for the reasons discussed above, the Court finds Defendants-Appellants are likely to succeed on the merits and holds that this factor weighs in their favor.

**B.       Irreparable Injury to Defendants-Appellants**

The threat of irreparable injury weighs strongly in favor of Defendants-Appellants.

Under this factor, the Court assesses the threat of irreparable harm that will be suffered if the stay is not granted. *McClendon*, 79 F.3d at 1020. The Supreme Court is clear that the mere possibility of irreparable injury is not enough to satisfy this factor; the "possibility standard is too lenient," as the injury must be likely. *Nken*, 556 U.S. at 434-35; *see also In re Stewart*, 604 B.R. 900, 907-08 (Bankr. W.D. Okla. 2019) (bankruptcy stay). The factor "is met [only] if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (preliminary injunction) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000)). It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (preliminary injunction) (also noting that the injury must be certain, great, actual, and not theoretical).

However, that is not to say that irreparable harm cannot arise from issues regarding economic injuries. On its face, the loss Defendants-Appellants will suffer by vacating the State

Court Judgment is primarily a monetary one,[9] but it falls within a small category of monetary losses that are unrecoverable and, therefore, irreparable.  An unrecoverable economic loss flies in the face of the reasoning courts have given for monetary damages not constituting irreparable injury.  *See, e.g.*, *Stewart*, 604 B.R. at 908 ("The prospect of recovering monetary damages for any such pre and post-petition transfers strongly militates against the extraordinary injunctive remedy of granting a stay.").  As a result, "[i]mposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."  *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010); *see also Bd. of Educ. v. Maez*, No. 16-CV-1082, 2017 WL 3610546, at *4-6 (D.N.M. Jan. 18, 2017) (finding irreparable harm where there is no mechanism to recoup the monies lost by complying with administrative order).

In the matter at hand, if the jury award in favor of Defendants-Appellants in the State Court Action is vacated "as void," it is unrecoverable.  Plaintiff has pointed the Court toward no mechanism by which such a jury award, once vacated, may be compensated by monetary damages (ECF No. 23 at 10-11), and this Court knows of none.  Indeed, at the hearing on the Motion, counsel for Plaintiff admitted that he could not think of a way to revive the State Court Judgment if Defendants-Appellants comply with the Adversary Judgment.[10]  Plaintiff's counsel further stated

---

[9] The Court notes that the judgment in the State Court Action has non-monetary effects as well. To this day, Renfrow strenuously denies that she ever acted with any intent to defraud, even as to the $3,100 she admits transferring to her own account.  If you are Renfrow—as noted below—the very existence of such a judgment is harmful to your reputation and something you do not want others to "find out."  (ECF No. 3-1 at 46.)  If you are Grogan (and the Adversary Judgment is reversed), however, it represents a vindication of your assertion that Renfrow threatened to "finish you" and that, through fraud, "Envision was wiped clean."  (ECF No. 20-1 at 654.)  Such considerations are generally irrelevant to the merits—a judgment is either valid or it is not—but they may explain the vociferousness of each party's representation in these cases.

[10] Plaintiff's counsel did mention the possibility that Grogan might dismiss the State Court Action and re-file within one year under Oklahoma's savings statute—however, even if such a dismissal constituted compliance with the Adversary Judgment, it is not possible here.  Oklahoma law allows

that Plaintiff was not amenable to posting a bond for the amount of the State Court Judgment, even

were such a solution were feasible.  Thus, if Defendants-Appellants are forced to comply with the

Bankruptcy Court's mandatory injunction, they will forever forfeit their right to the State Court

Judgment.   Premature compliance with the Bankruptcy Court's injunctive order risks the

possibility of an untenable result.  If Defendants-Appellants are successful on appeal, they may

avoid <u>paying</u> additional funds to Renfrow, but they will never be able to recover what they have

lost—a judgment finding that Renfrow defrauded them and $89,500 (or even $3,100) in damages.

The Court finds this factor weighs in Defendants' favor.

### C.     Substantial Injury to Plaintiff

Plaintiff argues she will suffer significantly if the injunctive portion of the Bankruptcy

Court's judgment is stayed—maintaining she will sustain reputational harm, emotional harm, and

financial harm.  (ECF No. 23 at 11.)  Moreover, she contends she will continue to suffer harm by

being denied the proper discharge of her bankruptcy.  (*Id.*)  Although some of these contentions

may be true, much of the alleged harm will not be avoided by the stay, nor will Plaintiff be

substantially injured by the denial of the stay.   This factor also weighs in favor of Defendants-

Appellants.

First, Plaintiff's contention that she will suffer financial harm—as "[t]he costs of appeal

are overwhelming" (*id.*)—does not weigh in her favor.  The State Court Action has been stayed

for over two years and remains stayed pending resolution of this appeal.   Plaintiff's counsel has

represented that no fees are being incurred on the state court matter at this time.  At the hearing on

---

a plaintiff to dismiss without prejudice "before the final submission of the case to the jury" and in
other limited circumstances.  Okla. Stat. tit. 12, § 683(1)-(5).  "In all other cases, upon the trial of
the action, the decision must be on the merits."  *Id.* § 683(6).  And, even if dismissal were possible,
there is no mechanism for a plaintiff to recover the costs of its dismissed action from the defendant.

the Motion, Plaintiff's counsel further argued that Renfrow is harmed by having to pay him to defend this appeal.  This will not be remedied by denying Defendants-Appellants' Motion.  The above-captioned appeal will be alive and well whether the stay is granted or not.  Therefore, the Court does not find Plaintiff's purported financial harm prohibitive to granting Defendants-Appellants' Motion.

Second, although the Court does not dispute that Plaintiff may suffer reputational and emotional harm by the continued existence of the underlying state court judgment and jury verdict against her, Defendants-Appellants have agreed to refrain from enforcing this judgment (ECF No. 18 at 9).  Moreover, the existence of an adverse judgment pending appeal—here, pending appeal in two cases—is not an especially unique harm and is suffered by all parties carrying adverse judgments against them through the appellate process.  Further, much of the harm asserted by Plaintiff arises from the very existence of the fraud judgment itself,[11] which was issued over three years ago.  This stay is about whether that existence continues into future months; it is not at all clear that such incremental harm is substantial.

Third, the Court recognizes that Plaintiff should be given the full benefit of her discharge in bankruptcy, but the harm done to Plaintiff's interest in failing to reap the benefits of her discharge do not outweigh the other factors in this evaluation.  This is particularly true when the Bankruptcy Court has also awarded Plaintiff compensatory and punitive damages based upon the entry of the very judgment she seeks to vacate—an award that is fully secured.  Any additional

---

[11] The parties have also admitted that—had the State Court Judgment of fraud been for only the $3,100 post-petition transfer—it would not have been voidable.  Given this fact, it is not clear to what extent Plaintiff's claimed harm arises from the existence of the State Court Judgment, as opposed to any judgment of fraud.

harm Plaintiff might suffer by not immediately obtaining the benefit of her discharge is not substantial.

**D.      Public Interest**

Lastly, the Court considers whether the public interest weighs in favor of granting Defendants-Appellants' Motion.  The undersigned finds that it does.  Particularly, the Court finds that the public interest favors preserving a party's ability to enforce state court judgments—to the extent they are valid under 11 U.S.C. § 524(a)(1)—and favors upholding the mechanisms available to determine the validity of such judgments.

Generally, federal courts give full faith and credit to state court judgments.  *See* 28 U.S.C. § 1738; *see also Pohl v. U.S. Bank*, 859 F.3d 1226, 1229 (10th Cir. 2017).  While it is true there are limits—federal courts "need not give full faith and credit to state court judgments to the extent that they are void under § 524(a)(1)"—it is also true that "bankruptcy court[s], of necessity, must be able to ascertain the extent to which the [state court] judgment is void under § 524(a)(1) as an essential element of determining whether the § 524(a)(2) discharge injunction has been violated." *Pavelich v. McCormick (In re Pavelich)*, 229 B.R. 777, 782 (B.A.P. 9th Cir. 1999).  As noted *supra*, a state court's judgment is only void to the extent it touches discharged debts, as opposed to post-petition activity.  *Id.*[12]

This is evident in the authority cited by the Bankruptcy Court in denying Defendants-Appellants' Motion:

> One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor
> from the weight of oppressive indebtedness, and permit him to start afresh free from

---

[12] "Statutory voidness and the statutory injunction under § 524(a) are limited to the discharge itself . . . If the state court construes the discharge correctly, its judgment will be enforced . . . .  If, however, the state court construes the discharge incorrectly, then its judgment may be void <u>to the extent it offends the discharge</u> and subject to collateral attack in federal court." *Pavelich*, 229 B.R. at 782 (emphasis added).

the obligations and responsibilities consequent upon business misfortunes." [citation omitted]. This purpose of the act has been again and again emphasized by the courts as *being of public as well as private interest*, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.

(ECF No. 23-5 at 16 (citing *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)) (second emphasis added).)  The Supreme Court, however, did not opine that the purpose of bankruptcy is to grant debtors a life that is "unhampered by the pressure and discouragement" of debt incurred after bankruptcy.  *Loc. Loan Co.*, 292 U.S. at 244.  Such a reading would be too broad.

[T]he concept of "fresh start" is just a general gloss on the purpose of § 524(a); it is not a license for courts to go beyond the particular prohibitions specified in the statute to shield debtors from adverse contingencies.  However well-intentioned the effort in trying to facilitate a debtor's fresh start, a bankruptcy court may not enjoin and sanction a creditor with respect to conduct that does not violate § 524(a).

*Paul*, 534 F.3d at 1307 (10th Cir. 2008).  A restrained reading of *Local Loan Co.* emphasizes the partitioned nature of state and federal concurrent jurisdiction that has been historically promoted by the Supreme Court.  *See, e.g. Covell v. Heyman*, 111 U.S. 176, 182 (1884).[13]  Allowing bankruptcy courts to enforce 11 U.S.C. § 524(a)(1), but only within the parameters set forth by statute, promotes traditional policies underlying state and federal interaction.[14]  Accordingly, the

---

[13] "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more.  It is a principle of right and of law, and therefore of necessity.  It leaves nothing to discretion or mere convenince." *Covell*, 111 U.S. at 182.

[14] For example, regarding preemption of state law by federal bankruptcy law, some courts have recognized the necessity for such preemption to be interpreted narrowly.  *See, e.g. Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 272-73 (3d Cir. 1984) ("[p]roper respect, therefore, for the independent sovereignty of the several States requires that federal supremacy be invoked only

Court finds that public interest weighs in favor of upholding state court judgments to the extent they are valid under federal law, and keeping in place the mechanisms by which parties may ascertain the validity of these judgments, whether it be by appealing to a higher state court, or preserving the object of the appeal pending resolution in federal court as Defendants-Appellants seek to do here.

## CONCLUSION

Based on the foregoing discussion, the Court finds Defendants-Appellants have made a substantial showing that all four factors weigh in favor of granting a stay.

IT IS THEREFORE ORDERED that Defendants-Appellants' Renewed Combined Motion to Stay Enforcement of Judgment Pending Appeal & To Fix the Amount of Supersedeas Bond (ECF No. 18) is GRANTED.  The undersigned incorporates its order set forth in ECF No. 33 as if contained herein.

IT IS FURTHER ORDERED that the injunctive portion of the judgment entered in Adv. Case No. 17-01027-R (Bankr. N.D. Okla.) is STAYED pending resolution of the appeal brought in the above-captioned matter.

ORDERED this 21st day of October, 2021.

_____

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

where it is clear that Congress so intended" and that "[s]tatutes should . . . be construed to avoid pre-emption, absent an unmistakable indication to the contrary").